**Robert T. GIRALDI, Jr.**

v.

**SEARS, ROEBUCK & COMPANY and Century/Wel–Bilt Industries Inc.**

**Civ. No. S 86–1143.**

United States District Court, D. Maryland.

June 1, 1988.

J. Gordon Forester, Jr., Pohoryles & Greenstein, Washington, D.C., for plaintiff.

Charles E. Wilson, Jr., McCarthy, Wilson, Ethridge & Guinn, Rockville, Md., for Sears, Roebuck & Co.

Phillips L. Goldsborough, III, Susan Martinelli Carrier, Smith, Somerville & Case, Baltimore, Md., for Century/Wel–Bilt Industries.

Richard H. Lerch, Lerch & Huesman, Towson, Md., for Delta.

## MEMORANDUM AND ORDER

SMALKIN, District Judge.

Now pending in this products liability action is the motion of defendant Century/Wel–Bilt Industries, Inc. (Century/Wel–Bilt) for summary judgment as to the second amended complaint of plaintiff Robert T. Giraldi, Jr. (Mr. Giraldi) and the cross-claim of defendant Sears, Roebuck & Company (Sears). Paper # 30. Mr. Giraldi and Sears both have filed their oppositions to Century/Wel–Bilt's motion in a timely fashion. Paper # 31, and paper # 32, respectively. No hearing is necessary to decide this motion. Local Rule 6(G), D.Md.

### I.

The following facts, which apparently are undisputed, are pertinent to the instant motion for summary judgment:

Mr. Giraldi purchased a folding attic stairway of then (and possibly still) unknown manufacture from Sears through its catalog in January or February of 1978. The stairway was thereafter installed in Mr. Giraldi's home by one Sam Aiken.

In November of 1984, Mr. Giraldi wished to install a wooden cover on his attic fan; he was stymied in his efforts, as he could not maneuver the cover through the attic floor opening with the stairway normally extended. Mr. Giraldi therefore undid the nuts on the support brackets of the stairway so that the stairway would hang perpendicular to the attic floor (or the ceiling above him), thus enabling him to maneuver the cover through the attic floor opening. Mr. Giraldi claims that, while he was maneuvering the cover through the attic floor opening, the spring tension in one of the newly unfastened support brackets of the stairway suddenly released, causing him to be struck in the eye. The eye was lost.

Mr. Giraldi later attempted to ascertain the manufacturer of the stairway, determining to his satisfaction that it was a company named Wel–Bilt Products Compa-

ny (Wel–Bilt). For the purposes of this motion only, the Court will assume that Wel–Bilt did, in fact, manufacture the stairway in question. By written agreement, Wel–Bilt sold certain of its assets to Delta Enterprises, Inc. (Delta), effective August 31, 1978. *See* paper # 30, exhibit B. These assets included, *inter alia:* the staircase and pocket door frame product lines; finished goods, raw materials and work in progress of these product lines; machinery and equipment related to these product lines; certain accounts receivable from sale of these product lines; patents, patent applications, proprietary manufacturing processes, trade secrets, and sales agreements related to these product lines; and unrestricted use of the trade name Wel–Bilt. *Id.* Delta assumed certain liabilities of Wel–Bilt. *Id.* In the assumption of liability section, the parties stated that "it is expressly understood and agreed that SELLER [Wel–Bilt] shall remain liable for all claims including products liability claims, whether arising prior to or after the date of closing, as may be made based upon SELLER'S manufacturing, developing, selling and/or distributing the Product Lines to be sold thereunder." *Id.* The individual seller, one Robert Webb, agreed to lease Wel–Bilt's premises, and provide consulting services, to Delta for a limited period of time. *Id.*

Delta, together with one James L. Jester, incorporated the company called Century/Wel–Bilt on October 17, 1983. Paper # 30, deposition of James L. Jester. Century/Wel–Bilt distributes wholesale lumber and manufactures folding attic stairways. *Id.*

Mr. Giraldi concludes his factual summation stating:

> There is no evidence as to what became of Wel–Bilt Products Company. In addition, some confusion exists as to the name of the operating entity which produced and sold the attic stairways after the sale of Delta Enterprises, Inc. on August 31, 1978 and until Century/Wel–Bilt Industries, Inc. was incorporated in October, 1983. Mr. [David] Seiler of Sears insists that from 1977 to 1981 he always purchased from "Wel–Bilt."

[Mr. Seiler was a buyer for Sears from 1977 until 1981.] At page 65 of his deposition, he stated it was Wel–Bilt Products Company and at page 46, his written agreements were always with Wel–Bilt Products Company.

The plaintiff submits that the evidence from Mr. Seiler makes it clear that the company continued to trade as Wel–Bilt or Wel–Bilt Products.

Paper # 31, at 3.

## II.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted where there is no genuine dispute as to material fact and the moving party is entitled to judgment as a matter of law. The moving party has the burden of showing that there is no genuine dispute as to material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the moving party has met this burden, the nonmoving party must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Adickes,* 398 U.S. at 160 n. 22, 90 S.Ct. at 1610 n. 22.

In deciding the motion, the Court must view the material facts and the inferences properly drawn therefrom, in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513; *Adickes,* 398 U.S. at 158–59, 90 S.Ct. at 1608–09. Summary judgment is inappropriate, even where there is no dispute as to the basic facts, if the parties disagree on the inferences that may be drawn from the undisputed facts. *Morrison v. Nissan Motor Co.,* 601 F.2d 139, 141 (4th Cir.1979). The substantive law, assumedly Maryland law on the issue now before this Court, *see Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), identifies those facts, or inferences therefrom, that are material and also identifies the standard of proof against which the pres-

ence or absence of material factual dispute is to be gauged. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

### III.

The Court first considers whether summary judgment should be granted with respect to the claims in the second amended complaint implicating Century/Wel–Bilt. Century/Wel–Bilt argues that the negligence and strict liability claims against it should be dismissed because (1) it did not manufacture the folding attic stairway at issue, (2) it is not responsible for any defects in the stairway given the continuing liability doctrine, and (3) it is not responsible for any defects in the stairway by virtue of any exception to the continuing liability doctrine. Paper # 30, at 4–18. Mr. Giraldi principally addresses the continuing liability argument in his opposition. Paper # 31, at 4.

It is undisputed that Century/Wel–Bilt was incorporated after manufacture and purchase of the stairway involved in the November, 1984 occurrence; Century/Wel–Bilt therefore could not have itself manufactured the stairway. The issue at this juncture is whether or not Century/Wel–Bilt is responsible for the product in light of the continuing liability doctrine or some exception to that doctrine.

As a preface, Century/Wel–Bilt seems to suggest that Arkansas law, which clearly accepts a continuing liability doctrine, might be applicable here. *See* paper # 30, at 10. One federal court apparently has characterized the issue as contractual for choice of law purposes, *see Bonee v. L & M Constr. Chemicals,* 518 F.Supp. 375 (M.D. Tenn.1981). The Wel–Bilt/Delta sale agreement has an internal choice of law clause, choosing Arkansas law. Paper # 30, exhibit B. On the basis that other federal courts have characterized the continuing liability issue as a tort question for choice of law purposes, Century/Wel–Bilt devotes the greater part of its motion to forecasting the probable acceptance of the continuing liability doctrine by the Maryland courts and the nonliability of Century/Wel–Bilt under that doctrine. Paper

# 30, at 10–14. Mr. Giraldi responds, assuming that Maryland law indeed is applicable. Paper # 31, at 4–13. The Court likewise assumes the applicability of Maryland law on the continuing liability issue, applying the tort law rule that Maryland traditionally applies, *viz., lex loci delicti. See Sokolowski v. Flanzer,* 769 F.2d 975, 978 (4th Cir.1985).

The continuing liability doctrine, which has not been expressly accepted or rejected by the Maryland courts, has been explained as follows:

> It is the general rule that where one company sells or otherwise transfers all of its assets to another company the latter is not liable for the debts and liabilities of the transferror, including those arising out of the latter's tortious conduct, except where: (1) the purchaser expressly or impliedly agrees to assume such debts; (2) the transaction amounts to consolidation or merger of the seller and purchaser; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is entered into fraudulently in order to escape liability for debts.

1 L. Frumer & M. Friedman, *Products Liability* § 2.06[2] at 2–172—2–173 (1988) (quoting *McKee v. Harris–Seybold Co.,* 109 N.J.Super. 555, 264 A.2d 98, 101–02 (1970), *aff'd,* 118 N.J.Super. 480, 288 A.2d 585 (1972), *overruled, Ramirez v. Amsted Industries, Inc.,* 86 N.J. 332, 431 A.2d 811 (1981)). Although the New Jersey courts have abandoned the continuing liability doctrine, the quotation from the *McKee* case remains one of the clearest statements of the traditional rule of nonliability of successor corporations in a sale of assets transfer and the four often narrowly-interpreted exceptions to this traditional rule. 1 L. Frumer & M. Friedman, *Products Liability* § 2.06[2] and [3], at 2–172—2–184. Some courts, in recent years, have expanded the traditional exceptions to allow recovery against successor corporations, given that the traditional rule "runs counter to the products liability policy of placing the burden on the party most able to bear the loss by spreading the risk." *Id.,* § 2.06[3],

at 2–184. Other courts have adopted a new exception denominated the "products line" theory, for the same reason. *Id.*, § 2.06[4], at 2–189—2–195. The product line theory has been stated and explained by the New Jersey Supreme Court as follows:

[W]e hold that where one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the same manufacturing operation as the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if manufactured or distributed by the selling corporation or its predecessor.

The social policies underlying strict products liability in New Jersey are best served by extending strict liability to a successor corporation that acquires the business assets and continues to manufacture essentially the same line of products as its predecessor, particularly where the successor corporation benefits from trading its product line on the name of the predecessor and takes advantage from its accumulated good will, business reputation and established customers.

*Ramirez v. Amsted Industries, Inc.*, 86 N.J. 332, 431 A.2d 811, 825 (1981). *See also Ray v. Alad Corp.*, 19 Cal.3d 22, 136 Cal.Rptr. 574, 582, 560 P.2d 3, 11 (1977). It appears that most other state courts, and federal courts interpreting state law, have declined to adopt the "product line" theory when faced with the issue. 1 L. Frumer & M. Friedman, *Products Liability* § 2.06[4] and notes thereto.

The Court has not found, and the parties have not produced, any controlling Maryland law on the continuing liability doctrine in the tort context. The Court therefore must forecast what the Court of Appeals of Maryland would decide if the question were before it. *See Wilson v. Ford Motor Co.*, 656 F.2d 960 (4th Cir.1981). This task is particularly difficult given that there is no reported Maryland law of any kind on the issue. However, Professor Wright furnishes courts with a blueprint for decision in such situations:

In vicariously creating law for a state, the federal court may look to such sources as the Restatements of Law, treatises and law review commentary, and "the majority rule." The federal court must keep in mind, however, that its function is not to choose the rule that it would adopt for itself, if free to do so, but to choose the rule that it believes the state court, from all that is known about its methods of reaching decisions, is likely in the future to adopt.

C. Wright, *Law of Federal Courts* § 58 at 375 (1983) (citations omitted).

■ With this blueprint in mind, the Court confronts the task at hand. The *Restatement (Second) of Torts* (1977) does not mention the continuing liability doctrine, and, consequently, it furnishes no guidance. By contrast, the treatise of Messrs. Fruman and Friedman is most helpful, as it includes a brief, but thorough, discussion of the continuing liability doctrine. There appears to be no question that the continuing liability doctrine as enunciated in the *McKee* case and set out above is the traditional and general (or majority) rule. The four exceptions to the traditional rule generally are narrowly construed. State courts, and federal courts sitting in diversity, have declined to follow the lead of California and New Jersey in adopting the product line theory. It seems to this Court that the Maryland courts would adopt the traditional rule as stated in *McKee*, deciding in each individual case how to construe the exceptions and declining to adopt the product line theory. This Court forecasts that the Court of Appeals of Maryland would accept the "pure" version of the traditional rule, because reported Maryland cases recognize limited successor liability in the corporate-matters sphere, *see Colandrea v. Colandrea*, 42 Md.App. 421, 433–35, 401 A.2d 480, 487–88 (1979), and seemingly would embrace the philosophy of not holding purchasing corporations responsible for unliquidated tort liabilities of the seller. In this Court's view, however, the Maryland courts would neither adopt the product line theory nor otherwise take a liberal approach to the exceptions to the traditional rule. As stated by

Chief Judge Gilbert of the Court of Special Appeals of Maryland (and his coauthors) in the *Maryland Tort Law Handbook,* "Maryland, in the area of product liability law, has been particularly conservative. Indeed, it is only within the last decade or so that the Court of Appeals has departed from its earlier stance relative to breach of warranty and strict liability and accepted a more modern or liberal view." R.P. Gilbert, P.T. Gilbert & R.J. Gilbert, *Maryland Tort Law Handbook* § 12.0, at 107 (1986). By way of example, the Court of Appeals of Maryland was presented with, but declined, an opportunity to follow the lead of California by adopting strict liability as early as 1968. *Id.,* § 12.1 at 107 (citing *Telak v. Maszczenski,* 248 Md. 476, 488, 237 A.2d 434, 440–41 (1968)). Strict liability only came to Maryland in 1976 with the decision in *Phipps v. General Motors Corp.,* 278 Md. 337, 352–53, 363 A.2d 955, 963 (1976). *Id.* at 108. A comparison (or contrast) of the elements of strict liability in Maryland and in California (the originator of not only strict liability in tort but the product line exception to continuing liability) further evidences the conservatism of Maryland courts with respect to product liability law. Under Maryland law, the claimant must establish that (1) the product was in a defective condition at the time it left the possession or control of the seller, (2) that it was unreasonably dangerous to the user or consumer, (3) that the defect was a cause of the injuries, and (4) that the product was expected to and did reach the consumer without substantial change in its condition. *Phipps v. General Motors Corp.,* 278 Md. at 344, 363 A.2d at 958. By way of contrast, the California court has held that, when a product is defective, there is no need to prove, additionally, that it is *unreasonably* dangerous. *Cronin v. J.B.E. Olson Corp.,* 8 Cal.3d 121, 104 Cal. Rptr. 433, 501 P.2d 1153 (1972). For these reasons, this Court will proceed on the assumption that the Maryland courts would accept the un-embellished traditional rule with respect to continuing liability.

■ The Court next addresses whether summary judgment should be granted for Century/Wel–Bilt on the ground that, un-der the continuing liability doctrine as it would be interpreted in Maryland, it is not responsible for any defects in the folding attic stairway. Given what appears to be a genuine dispute as to material fact, the Court is constrained to deny Century/Wel–Bilt's motion. Mr. Giraldi has satisfied his burden under recent Supreme Court law of showing facts and inferences therefrom indicating a genuine dispute as to whether Century/Wel–Bilt falls clearly within the continuing liability doctrine, thus being shielded from liability, or is vulnerable under an exception to that doctrine. *See Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. From the facts presented, it might logically be inferred that there was no distinct entity called Wel–Bilt after the sale of assets to Delta, and that Wel–Bilt was subsumed in Delta and later in its subsidiary Century/Wel–Bilt. The issue of whether Century/Wel–Bilt is protected by the continuing liability doctrine, therefore, must await jury trial.

## IV.

■ Century/Wel–Bilt also argues that it is entitled to summary judgment on the cross-claim of Sears for indemnity and contribution, because in its view there is no evidentiary basis for indemnity or contribution. Paper # 30, at 18. Sears retorts that it is entitled to indemnity or contribution from Century/Wel–Bilt. Paper # 32, *passim.*

In Maryland as elsewhere, the right to indemnity may arise by express agreement between the parties. *Southern Maryland Oil Co. v. Texas Co.,* 203 F.Supp. 449, 452 (D.Md.1962). "Maryland law [also] recognizes a right to indemnity independent of any contract where the character of one tortfeasor's conduct is significantly different from that of another who is also liable for the same damages." *Pyramid Condominium Ass'n v. Morgan,* 606 F.Supp. 592, 595 (D.Md.1985) (citing *Blockston v. United States,* 278 F.Supp. 576, 585 (D.Md. 1968)), *aff'd,* 823 F.2d 548 (4th Cir.1987); *Gardenvillage Realty Corp. v. Russo,* 34 Md.App. 25, 40–41, 366 A.2d 101, 111 (1976)). It is additionally the case in Mary-

land that a right of contribution exists among joint tortfeasors. *See Exxon Corporation v. Yarema,* 69 Md.App. 124, 134–35, 516 A.2d 990, 995–96 (1986).

The parties disagree as to whether there is an applicable indemnification contract between them. Given the factual dispute as to whether or not Century/Wel–Bilt is responsible for any defects in the Wel–Bilt product given the continuing liability doctrine, it is impossible at this juncture otherwise to determine the positions of Century/Wel–Bilt and Sears vis-a-vis each other. The Court thus declines to enter summary judgment on the Sears' cross-claim in Century/Wel–Bilt's favor.

### V.

Accordingly, it is this 1st day of June, 1988, by the United States District Court for the District of Maryland, ORDERED:

1. That defendant Century/Wel–Bilt's motion for summary judgment is *denied;* and

2. That the Clerk of the Court mail copies of this Memorandum and Order to counsel for the parties.