**Michael F. NICCUM, Appellant,**

v.

**HYDRA TOOL CORPORATION, Respondent.**

**No. C0–88–1232.**

Supreme Court of Minnesota.

March 31, 1989.

Sharon L. Van Dyke, Minneapolis, for appellant.

Richard A. Koehler, Minneapolis, for respondent.

POPOVICH, Chief Justice.

Appellant Michael Niccum filed a complaint against respondent Hydra Tool Corporation on December 5, 1986, seeking damages for an injury he suffered to his right hand while operating a Wisconsin Forcemaster Press Brake at A & D Fabricating Company in Blaine, Minnesota. Respondent moved for summary judgment, arguing that as a corporate successor to the manufacturer of the press brake it was not liable for injuries caused by a predecessor's product. Appellant brought a cross-motion for summary judgment on the successor liability issue and a motion to amend his complaint to add a direct claim against respondent for failure to warn of a defective product.

The trial court granted respondent's summary judgment motion and denied appellant's cross-motion for summary judgment and motion to amend his complaint. That court found Minnesota does not recognize either (1) a "mere continuation" or "product line" exception to the general limitation on corporate successor liability, or (2) a direct cause of action against a successor corporation for failure to warn users of defects in a predecessor corporation's product. Appellant appealed to the Minnesota Court of Appeals, which certified this matter pursuant to Minn.R.Civ. App.P. 118, subd. 3, and Minn.Stat. § 480A.10, subd. 2(b)(i) (1988), seeking accelerated review before this court. We granted this request in an order filed September 21, 1988, and now affirm the judgment.

## I.

On March 21, 1985, Michael Niccum severely and permanently injured his right hand while operating a Forcemaster Press Brake on the premises of the A & D Fabricating Company. The machine in question was designed by the Wisconsin Machine Corporation ("WMC"). In February 1973, WMC sold certain designs and patents, including the press brake design and patent, to the Wisconsin Equipment Corporation ("WEC"). WMC dissolved in December 1973. In May 1973, WEC manufactured and sold a Wisconsin Forcemaster Press Brake, Model 10 FM 100, serial number 73384, to Alloy Hard Facing & Engineering Co. located in Minneapolis, Minnesota. The chain of ownership of this particular machine is unknown; however, in 1985 it was owned by A & D Fabricating in Blaine where Niccum was injured.

After the sale of the press brake by WEC to Alloy, another company known as HTC, Inc. purchased all of the assets of WEC on July 22, 1977. HTC, Inc. is a wholly owned subsidiary of Hydra Tool Corporation and was incorporated in the summer of 1977 to enter the agreement with WEC. The purchase agreement required HTC to provide a certain amount of cash and in return HTC would receive essentially all of the assets of WEC, including land, buildings, inventory, contracts, customer lists, accounts receivable, patents, trademarks and "good will." It expressly provided HTC would assume no liability for injuries caused by WEC products already on the market. Such liability was to be retained by WEC. Following the sale to HTC, WEC dissolved on October 3, 1977. Hydra Tool had no prior knowledge that WEC would dissolve following the transaction.

For approximately three months, HTC, Inc., continued to use the WEC facility in Wisconsin, manufacturing press brakes of the WEC design and using WEC inventory. HTC, Inc., then dissolved and its assets were assumed by Hydra Tool Corporation. The officers and directors of HTC, Inc., and Hydra Tool Corporation were essentially the same. Hydra Tool moved its manufacturing operations to Greenwood, Mississippi, and continued to manufacture mechanical press brakes there for approximately one year.

## II.

This case comes before us on review of summary judgment for respondent and the denial of appellant's motion to amend his complaint. "On an appeal from summary judgment, the role of the reviewing court is to review the record for the purpose of answering two questions: (1) whether there are any genuine issues of material fact to be determined, and (2) whether the trial court erred in its application of the law." *Offerdahl v. University of Minnesota Hospitals & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). The moving party has the burden of proof for a summary judgment. *Nord v. Herreid*, 305 N.W.2d 337, 339 (Minn.1981). On review an appellate court must view the evidence in the light most favorable to the party against whom the motion was granted. *Grondahl v. Bulluck*, 318 N.W.2d 240, 242 (Minn.1982).

■ The decision whether to permit a party to amend pleadings rests within the discretion of the trial court and will not be reversed without evidence of a clear abuse of such discretion. *Warrick v. Giron*, 290 N.W.2d 166, 169 (Minn.1980). Minn.R.Civ. P. 15.01 vests wide discretionary powers in the trial court for the liberal granting of an amendment to the pleadings when justice in the particular case so requires, even though the proposed amendment may change the legal theory of the action. *Colstad v. Levine*, 243 Minn. 279, 285, 67 N.W.2d 648, 653 (1954).

## III.

Minnesota follows the traditional approach to corporate successor liability. In *J.F. Anderson Lumber Co. v. Myers*, 296 Minn. 33, 206 N.W.2d 365 (1973), we set forth four circumstances under which successor corporations may be held liable for actions of a transferor corporation:

> [W]here one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor, except: (1) where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporation; (3) where the purchasing corporation is merely a continuation of the selling corporation; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts.

*Id.* at 37–38, 206 N.W.2d at 368–69. Appellant concedes none of these traditional exceptions to the non-liability rule are applicable in this case. Instead appellant asks this court to expand the *Anderson* rule to include other exceptions.

In 1981, the Minnesota legislature addressed the question of transferee liability in Act of May 27, 1981, ch. 270, § 97, 1981 Minn.Laws 1208; Minn.Stat. § 302A.661 (1988). The statute states in part:

Transferee liability. The transferee is liable for the debts, obligations, and liabilities of the transferor only to the extent provided in the contract or agreement between the transferee and the transferor or to the extent provided by this chapter or other statutes of this state.

Minn.Stat. § 302A.661, subd. 4. The reporter's notes to this section commented:

Subdivision 4 of this section is aimed at limiting the civil liabilities of transferors assumed by transferees to those agreed to between the parties or imposed by law, even if the transferee is operating the corporation in exactly the same manner as it was operated by the transferor. This limits, for example, exposure to product liability claims for items manufactured by the transferor.

General Comment–1981, Minn.Stat.Ann. 302A.661 (West 1985). This statute indicates an intent of the legislature to limit any further extension of successor liability beyond the traditional exceptions already provided in *Anderson.*

■ Appellant seeks to have the third exception to the non-liability rule, mere continuation, expanded to include cash-for-assets sales. Under the traditional rule mere continuation "refers principally to a 'reorganization' of the original corporation" under federal bankruptcy law or through state statutory devices. *J.F. Anderson,* 296 Minn. at 38, 206 N.W.2d at 369. This court held that "continuity of business, name, and management alone, is not, we think, sufficient basis for holding a transferee liable for the debts of the transferor." *Id.* If there is no continuation of the corporate entity—shareholders, stock, and directors—the successor corporation is not liable. Expansion of the "mere continuation" exception focuses on the continuity of

the business operation, not the corporate entity.

The Michigan Supreme Court expanded the mere continuation exception in *Turner v. Bituminous Casualty Co.,* 397 Mich. 406, 244 N.W.2d 873 (1976). The court held there should be no distinction between a merger and a sale of assets for cash in imposing liability on a successor corporation. *Id.* at 429, 244 N.W.2d at 883. The *Turner* decision has not received strong support in other states. Eight states—Kentucky, Missouri, Nebraska, New York, North Dakota, South Dakota, Vermont and Wisconsin—have declined to expand the mere continuation exception.[1] Opponents of the expansion argue liability should not be imposed on a successor corporation because (1) the successor corporation did not create the risk by placing the defective product into the market; (2) any profit realized on the product is only received in a remote way; and (3) the successor has not represented to the public the safety of the predecessor's product. We find these arguments persuasive and decline to expand the continuation exception.

Appellant also argues for an imposition of successor liability under the product line exception adopted by the California Supreme Court in *Ray v. Alad Corp.,* 19 Cal.3d 22, 560 P.2d 3, 136 Cal.Rptr. 574 (1977). Under the product line theory, a successor corporation which continues to manufacture a product of the business it acquires, regardless of the method of acquisition or any possible attribution of fault, assumes strict liability for products manufactured and sold before the change of corporate ownerships. *Id.* at 34, 560 P.2d at 11, 136 Cal.Rptr. at 582.

■ The majority of courts which examined the product line exception have declined the invitation to adopt it.[2] These

1. *See, Wallace v. Dorsey Trailers Southeast, Inc.,* 849 F.2d 341, 343 (8th Cir.1988) (applying Missouri law); *Conn v. Fales Div. of Mathewson Corp.,* 835 F.2d 145, 147 (6th Cir.1987) (applying Kentucky law); *Hamaker v. Kenwel–Jackson Machine, Inc.,* 387 N.W.2d 515, 519 (S.D.1986); *Fish v. Amsted Industries, Inc.,* 126 Wis.2d 293, 312, 376 N.W.2d 820, 824–25 (1985); *Downtowner, Inc. v. Acrometal Products, Inc.,* 347 N.W.2d 118, 124–25 (N.D.1984); *Ostrowski v. Hydra–Tool Corp.,* 144 Vt. 305, 308, 479 A.2d 126, 127 (1984); *Schumacher v. Richards Shear Co., Inc.,* 59 N.Y.2d 239, 245, 451 N.E.2d 195, 198, 464 N.Y.S.2d 437, 440 (1983); and *Jones v. Johnson Machine & Press Co.,* 211 Neb. 724, 729, 320 N.W.2d 481, 484 (1982).

2. *See Conn v. Fales Div. of Mathewson Corp.,* 835 F.2d 145, 147–48 (6th Cir.1987) (applying

courts have generally based their decisions on one or more of the following arguments: (1) the exception is inconsistent with elementary products liability principles, and strict liability principles in particular, in that it results in an imposition of liability without a corresponding duty; (2) the exception threatens small successor businesses with economic annihilation because of the difficulty involved in obtaining insurance for defects in a predecessor's product; and (3) the exception is essentially a radical change in the principles of corporation law, and, as such, should be left to legislative action. We agree with this reasoning and decline to adopt the product line exception. Accordingly, we hold the traditional limitations on successor liability remain the law in this state.

### IV.

■ The trial court denied appellant's motion to amend his complaint against respondent to allege failure to warn of a defective, unreasonably dangerous product, stating that Minnesota has not imposed such a duty on a successor corporation. Appellant argues this court adopted such an independent duty to warn in *Hodder v. Goodyear Tire & Rubber Company*, 426 N.W.2d 826 (Minn.1988). In *Hodder*, however, we were concerned with different issues. *Hodder* involved the manufacture of defective tire rims (K-rims) by Goodyear. Motor Wheel Corporation was a wholly-owned subsidiary of Goodyear and handled the marketing of the K-rim, although it

was not involved in their manufacture. *Id.* at 832, n. 5. We held that Motor Wheel "assumed a duty to warn about K-rims, which it shared with Goodyear." *Id. Hodder* differs from the present matter because Motor Wheel was a subsidiary of the manufacturer, Goodyear, while Hydra Tool is merely a successor to Wisconsin Equipment Corporation. We specifically limited the duty to warn imposed in *Hodder* to the facts of that case involving a subsidiary corporation.

In the case of successor corporations, the Seventh Circuit Court of Appeals set forth a list of factors to be examined in determining whether a duty to warn should be imposed:

> Succession to a predecessor's service contracts, coverage of the particular machine under a service contract, service of that machine by the purchaser corporation, a purchaser corporation's knowledge of defects and of the location or owner of that machine, are factors which may be considered in determining the presence of a nexus or relationship effective to create a duty to warn.

*Travis v. Harris Corp.*, 565 F.2d 443, 449 (7th Cir.1977). The facts of this case do not support the imposition of a duty to warn under the *Travis* analysis. Hydra Tool never succeeded to any service contracts held by WEC and never serviced any of the press brakes under a service contract. Hydra Tool was not aware of any particular defects associated with the press brake. Hydra Tool did not know the loca-

Kentucky law); *Giraldi v. Sears, Roebuck & Co.,* 687 F.Supp. 987, 991–92 (D.Md.1988); *Simoneau v. South Bend Lathe, Inc.,* 130 N.H. 466, 469–70, 543 A.2d 407, 409 (1988); *DeLapp v. Xtraman, Inc.,* 417 N.W.2d 219, 222 (Iowa 1987); *Flaugher v. Cone Automatic Machine Co.,* 30 Ohio St.3d 60, 66–67, 507 N.E.2d 331, 337 (1987); *Hamaker v. Kenwel-Jackson Machine, Inc.,* 387 N.W.2d 515, 519–20 (S.D.1986); *Bullington v. Union Tool Corp.,* 254 Ga. 283, 285, 328 S.E.2d 726, 728 (1985); *Fish v. Amsted Industries, Inc.,* 126 Wis.2d 293, 309–10, 376 N.W.2d 820, 828 (1985); *Downtowner, Inc. v. Acrometal Products, Inc.,* 347 N.W.2d 118, 123 (N.D.1984); *Gonzalez v. Rock Wool Engineering & Equipment Co., Inc.,* 117 Ill.App.3d 435, 440, 72 Ill. Dec. 917, 921, 453 N.E.2d 792, 796 (1983); *Schumacher v. Richards Shear Co., Inc.,* 59 N.Y.2d 239, 246–47, 451 N.E.2d 195, 198, 464 N.Y.S.2d

437, 440–41 (1983); *Bernard v. Kee Manufacturing Co., Inc.,* 409 So.2d 1047, 1049 (Fla.1982); *Jones v. Johnson Machine & Press Co.,* 211 Neb. 724, 729, 320 N.W.2d 481, 484 (1982); *Pelc v. Bendix Machine Tool Corp.,* 111 Mich.App. 343, 356, 314 N.W.2d 614, 620 (1981); *Young v. Fulton Iron Works Co.,* 709 S.W.2d 927, 940 (Mo.Ct. App.1986); *Goucher v. Parmac, Inc.,* 694 P.2d 953, 954 (Okla.Ct.App.1985); *Griggs v. Capital Machine Works,* 690 S.W.2d 287, 294 (Tex.Ct. App.1985); *Ostrowski v. Hydra–Tool Corp.,* 144 Vt. 305, 308, 479 A.2d 126, 127 (1984); *but see Martin v. Abbott Laboratories,* 102 Wash.2d 581, 609, 689 P.2d 368, 388 (1984); *Ramirez v. Amsted Industries, Inc.,* 86 N.J. 332, 347–48, 431 A.2d 811, 819–822 (1981); *Dawejko v. Jorgensen Steel Co.,* 290 Pa.Super. 15, 26, 434 A.2d 106, 111 (1981).

tion of the machine at the time Niccum was injured. Hydra Tool also developed its own customer lists and did not use those supplied by WEC. Under these facts we find no independent duty to warn on the part of respondent Hydra Tool. We affirm the trial court's denial of appellant's motion to amend his complaint.

Affirmed.