**J & B CO. and William D. Breneman, Appellants,**

v.

**BELLANCA AIRCRAFT CORPORATION, a Minnesota corporation, Appellee.**

No. 89–5414.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1990.

Decided Aug. 16, 1990.

William D. Breneman, Washington, D.C., for appellants.

Dean K. Johnson, Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, TIMBERS,* Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

PER CURIAM.

J & B Company, a Maryland partnership, and William Breneman, one of the partners, appeal the grant of summary judgment in favor of Bellanca, Inc. (Bellanca). Plaintiffs brought this products liability action against Bellanca for injuries arising out of the crash of a light plane. The plane had been manufactured in 1973 by Bellanca Aircraft Corporation (BAC), a small corporation with factories in Alexandria, Minnesota, and Osceola, Wisconsin. In 1981 BAC filed for Chapter 11 bankruptcy reorganization, which converted to Chapter 7 liquidation in 1982. Later that year Bellanca was organized and the new company purchased from the bankruptcy trustee about 14% of the assets of BAC.

Breneman crash landed the plane in College Park, Maryland, in 1985. Plaintiffs claim the engine failed shortly after take-off because of a design defect that allowed undetectable water to collect in the fuel system. The district court[1] granted summary judgment in favor of Bellanca on the ground that it was not liable as a successor corporation under Minnesota law or under Federal Aviation Administration regulations. We affirm.

On appeal the plaintiffs challenge the applicability of Minnesota law. They assert Maryland law applies and would more easily allow liability against Bellanca as a successor corporation. Judge Devitt found Minnesota law applied and resolved that application of Maryland law would make no difference because Minnesota and Maryland law on successor corporations is the same. Plaintiffs also claim that Minnesota law is preempted under FAA regulations.

■ The federal district court is bound to follow the choice of law rules of the state in which it sits, in this case Minnesota. The Minnesota Supreme Court has ruled that the place of injury does not determine the choice of law. Rather, the choice is guided by five factors: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law. *See Milkovich v. Saari*, 295 Minn. 155, 161, 203 N.W.2d 408, 412 (1973).

■ We find that the district court did not err in applying Minnesota law. Even assuming Maryland law were different from Minnesota law on the issue of corporate successor liability, and we are unpersuaded it is [2], application of the *Milkovich* criteria supports applying Minnesota law.

■ The Minnesota Supreme Court has adopted the following approach to corporate successor liability:

[W]here one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor, except: (1) where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporation; (3) where the purchasing corporation is merely a continuation of the selling corporation; and (4) where the trans-

---

* The HONORABLE WILLIAM H. TIMBERS, Senior Circuit Judge for the United States Court of Appeals for the Second Circuit, sitting by designation.

1. The Honorable Edward J. Devitt, United States District Court for the District of Minnesota.

2. Both Maryland and Minnesota follow the traditional rule to corporate successor liability. *Compare Niccum v. Hyrdra Tool Corp.*, 438 N.W.2d 96, 98 (Minn.1989) (expressly stating Minnesota's adherence to traditional rule) *with*

*Giraldi v. Sears, Roebuck & Co.*, 687 F.Supp. 987, 991–92 (D.Md.1988) (in absence of decision from Maryland Supreme Court, federal district court predicted traditional rule would apply). Plaintiffs argue, however, that the two states take a different approach to the exceptions to the general rule. We have carefully reviewed the relevant decisions by the federal district court of Maryland, and we are convinced the result would be the same were they applied in this case.

action is entered into fraudulently in order to escape liability for such debts. *Niccum v. Hydra Tool Corp.*, 438 N.W.2d 96, 98 (Minn.1989), *quoting J.F. Anderson Co. v. Myers*, 296 Minn. 33, 37–38, 206 N.W.2d 365, 368–69 (1973).

Plaintiffs concede that under this Minnesota rule Bellanca is not liable as the successor to BAC. Plaintiffs argue, however, that a successor corporation may be obligated to a customer of its predecessor through servicing the predecessor's product. In this case, plaintiffs urge, Bellanca had a duty to warn them of the alleged fuel line defect because Bellanca serviced the plane. In *Niccum* the Minnesota court adopted the Seventh Circuit's approach to this duty to warn issue:

> Succession to a predecessor's service contracts, coverage of the particular machine under a service contract, service of that machine by the purchaser corporation, a purchaser corporation's knowledge of defects and of the location or owner of that machine, are factors which may be considered in determining the presence of a nexus or relationship effective to create a duty to warn.

438 N.W.2d at 100, *quoting Travis v. Harris Corp.*, 565 F.2d 443, 449 (7th Cir.1977).

In this case the district court found this doctrine inapplicable because Bellanca did not succeed to any of BAC's service contracts, and plaintiffs' plane was not covered by any service contract with Bellanca or in fact serviced by Bellanca. The plaintiffs argue that in finding that their plane was not in fact serviced by Bellanca, the court decided a disputed issue of material fact, in violation of Fed.R.Civ.P. 56. We interpret the court to have held that on the evidence submitted a reasonable jury could not have found that Bellanca serviced the plane. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). Because our own review of the record leads us to the same conclusion, we affirm on this issue.

Breneman called Bellanca to ask advice on repair of the wing of J & B's Super Viking. A Bellanca employee referred Breneman to Weber's Aero Repair, Inc.

(Weber's), a nationally recognized repair shop for Bellanca aircraft located in a different part of the same building occupied by Bellanca's present factory. According to Breneman's affidavit and deposition, he thereafter dealt exclusively with Weber's, which the undisputed record reveals to be a separate legal entity and business from Bellanca. Breneman stated, however, that he specifically told Weber's that if the whole wing needed to be replaced, he wanted the work done by "the factory," presumably meaning Bellanca. But, the wing was not replaced; it was repaired, and Weber's billed Breneman for the job. The invoice of $12,500 included one item of $2125 for "outside repair." An affidavit from the owner of Weber's stated that "outside repair" referred to work contracted out to a former senior employee of BAC who was an expert in the design, construction, and repair of Super Viking wings. Breneman can point to no statement by anyone at Weber's or Bellanca suggesting work was done by Bellanca, or rebutting Weber's explanation of "outside repair." We conclude that a reasonable jury could not have found Bellanca repaired plaintiffs' aircraft. Summary judgment on the duty to warn issue was appropriate.

■ Alternatively, plaintiffs assert that Federal Aviation Administration regulations preempt Minnesota law. Judge Devitt analyzed these regulations and found nothing within them which in any way would override Minnesota law on corporate successor liability. We agree with Judge Devitt's analysis and we find little merit to plaintiff's argument. Little precedential purpose would be served by further discussion.

We affirm. *See* 8th Cir.R. 47.