[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT LYNN LADDER AND SCAFFOLDING COMPANYMOTION FOR SUMMARY JUDGMENT
This case arises out of the injuries allegedly sustained by the plaintiff, James Sullivan, as a result of a fall from an extension ladder. The complaint alleges the ladder was manufactured and sold by the A.W. Flint Company, Inc. It is further alleged that Lynn Ladder Scaffolding Company, Inc. is a successor in interest to Flint. The sole claim against Lynn Ladder is that of successor liability for the tortious conduct of Flint; there are no allegations of tortious conduct on the part of Lynn Ladder. The defendant Lynn Ladder has now filed a motion for summary judgment. The standards for deciding a motion for summary judgment are well-known as well as their purpose. When a party is entitled to such a motion being granted it should be since such motions serve the important function of removing non-meritorious cases from court dockets saving litigants and the courts from what might otherwise be an expensive and protracted waste of their time. On the other hand such motions should not be granted if there is a genuine issue of material fact. Such issues must be decided by a jury because the non-moving party has a right to a jury trial on disputed issues of fact. Because, in part, of the posture adopted by the plaintiffs in their opposition to the motion, I believe it can fairly be said that this case turns not so much on disputed issues of fact but on the law to be applied to a given set of facts that are not disputed for the purposes of this motion or for the purposes of resolving the legal issues now before the court.
The defendant Lynn Ladder cites general principles of law which the plaintiff does not contest. The rule applicable to this case is set out in Ricciardello v. J.W. Gamt Co., 717 F. Sup. 56,57-58 (D. Conn. 1989). CT Page 5256-R
 "Under the general rule, a corporation which purchases all the assets of another company does not become liable for the debts of its predecessor unless:
 (1) the purchase agreement expressly or impliedly so provides;
 (2) there was a merger or consolidation of two of the two firms.
 (3) the purchaser is a mere continuation of the seller, or
 (4) the transaction is entered into fraudulently for the purpose of escaping liability."
Fletcher, 15 Cyc. Corp. § 7122 (1990) describes the general rule as "well settled". Fletcher notes a fifth exception which is sometimes incorporated into an analysis of the four exceptions just mentioned. The Fifth exception is the absence of adequate consideration for the sale or transfer.
The defendant discusses each of the traditional exceptions in its brief. Relying on this analysis the defendant Lynn Ladder maintains there is no genuine issue of material fact as to whether Lynn assumed Flynn's liability for product liability claims. The purchase and sale agreement between the two companies expressly excluded liability for any liabilities except those listed in the agreement. The assumed liabilities, which are explicitly set forth, do not include product liability claims.
Lynn points to a variety of factors established by exhibits attached to its motion which indicate also that Lynn is not merely a continuation of Flint. Lynn has been in the business of manufacturing and distributing ladders as a competitor of Flynn for many years. The companies remained separate legal entities after the agreement was completed, they didn't share officers, directors, stock, or stockholders and Lynn did not continue to do business under the name of Flint.
The defendant Lynn notes also that there is no allegation made that the transaction between the two companies was entered into fraudulently; for example, there is no claim the transaction CT Page 5256-S was entered into to avoid the plaintiff's claim or the claims of people similarly situated.
The defendant Lynn also maintains that the facts make clear as established by the affidavit of Lynn's President Mr. Kline that the merger exception does not apply to this case. The court in Ladjevardian v. Laidlaw-Coggeshall, Inc., 431 F. Sup. 834, 838
(S.D.N.Y., 1977); said: "A merger contemplates the `absorption of one corporation by another which retains its name and corporate identity with the added capital, franchise, and powers of a merged corporation. . . . A consolidation envisions the joining together of the two corporations so that a totally new corporation emerges and the two others cease to exist," also seeRicciardello v. J.W. Gant Co., 717 F. Supp. at page 58. In other words there must be a full corporate reorganization in which the predecessor is extinguished. Factors to be considered are pointed out in a case cited by Lynn, Santa Maria v. Owens-Illinois,Inc., 808 F.2d 848, 860-861 (CA 1, 1986), see also Shumacher v.Richads Shear Co., Inc., 464 N.Y.S.2d 437 (1983). The affidavit submitted by Mr. Kline negate several of the factors necessary for successor liability under the merger-consolidation exception. There is no allegation here of inadequacy of consideration and no mixture of officers after the transaction. The courts have not found successor liability where the transactions were for cash not stock and both corporations survived the transaction and there were no continuity of shareholders. The Kline affidavit indicates that none of these factors would dictate a finding of successor liability under the merger-consolidation theory. The plaintiff alleges Lynn assumed the liabilities and obligations of Flint ordinarily necessary for the uninterrupted continuation of normal business operations. The cases consider this a fact to be weighed but the plaintiff does not take the position that this or any other evidence it has referred to would allow a finding of merger — consolidation as traditionally defined as an exception to the rule against successor liability. Apart from merger strictly speaking, obviously no consolidation occurred either; no new corporation was created by the transaction, in fact after the transaction both corporations continued their separate corporate existence.
Mr. Kline's affidavit is quite thorough and establishes that none of the exceptions to the so-called general rule of nonliability of a corporation which purchases the assets of another corporation for the debts and liabilities of corporation from which the purchase was made. CT Page 5256-T
The plaintiff does not contest these general principles of law just cited nor has it submitted counter-affidavits or other documentation to raise any disputed issue of fact concerning whether any traditional exception to the general rule exists in this case.
However, the plaintiff argues that the Lynn's analysis is good only so far as it goes. Lynn according to the plaintiff fails to mention two theories of successor liability which also constitute exceptions to the general rule of non-liability. These are the so-called (1) continuity of enterprise theory Cyr v. B.Offen Co., Inc., 501 F.2d 1145 (CA 1, 1974), Turner v.Bituminous Cas Co., 244 N.W.2d 873 (Mich 1976) and the product line continuation theory, Ray v. Alad Corporation, 560 P.2d 3
(Cal, 1977), Ramirez v. Amsted Industries, Inc., 431 A.2d 811
(N.J., 1981). The reasons why the courts have expanded successor liability by adopting these two additional theories are well laid out by the New Jersey Supreme Court in Ramirez at431 A.2d pp. 815-816
and the court then goes on to discuss the two theories at pp. 817-825 adopting the product line continuation theory set forth in Ray v. Alad Corp., supra. The latter case gives a succinct analysis of why it felt it necessary to expand liability of successor corporations at 560 P.2d pp. 8-9. For a general discussion see Fletcher, 15 Cyc Corp. §§ 7123.05 — 7123.07, pp. 266 through 284.
The reason why the courts have felt it necessary to expand successor liability beyond the general rule is set forth inRamirez in two quotes at page 815 and 816.
 "Courts have come to recognize that the traditional rule of nonliability was developed not in response to the interests of parties to products liability actions, but rather to protect the rights of commercial creditors and dissenting shareholders following corporate acquisitions, as will as to determine successor corporation liability for tax assessments and contractural obligations of the predecessor."
Referring to an older New Jersey case the court went on to say: ". . . narrow application of the McKee approach to corporate successor liability is indeed inconsistent with the developing CT Page 5256-U principles of strict products liability and unresponsive to the interest of persons injured by defective products in the stream of commerce."
These general observations, as the Ramirez court in part recognizes, raise two interconnected considerations. For one thing expansions of liability theories by common law courts do not occur in a vacuum. Various results flow from new doctrines that must be taken into account. Thus at 431 A.2d pp. 822-823Ramirez recognizes as a "legitimate concern" the argument "that the imposition of strict products liability on corporations that purchase manufacturing assets for cash will have a chilling — even a crippling effect — on the ability of the small manufacturer to transfer ownership of its business assets for a fair purchase price rather than be forced into liquidation proceedings. Business planners for prospective purchasing corporations will be hesitant to acquire (a potential can of worms that will open with untold contingent product liability claims." The court also notes that small manufacturing operations "may not find readily available adequate and affordable insurance coverage for liability arising out of injuries caused by the predecessor's defective products." But not to worry, the court goes on to say: . . . "these concerns, genuine as they may be, cannot be permitted to overshadow the basic social policy, now so well-entrenched in our jurisprudence, that favors imposition of the costs of injuries from defective products on the manufacturing enterprise and consuming public rather than on the innocent injured party." In effect then, the first consideration — the results to be expected by expanding a successor corporation liability — is related to the basic consideration which is the proper ambit of strict liability theory. In fairness to the courts who refuse to accept expanded successor liability on the basis of the two theories referred to by the plaintiff, they believe Turner and Ramirez go beyond the appropriate application of strict liability theory itself. Thus in rejecting Ray v. Alad, supra and its imposition of successor corporation liability the court in Simoneau v. South Bend Lathe,Inc., 543 A.2d 407, 409 (N.H., 1988) said:
 Indeed, as pointed out by the defendants' counsel at oral argument, proof of a manufacturer's responsibility remains an essential element of a plaintiff's strict liability claim under New Hampshire law. Thibault, supra at 806, 395 A.2d at 846; CT Page 5256-V Buttrick v. Lessard, 110 N.H. 36, 39, 260 A.2d 111, 113 (1969) (quoting Restatement (Second) of Trots § 402A comment f (1966) for the proposition that manufacturer's responsibility to public is basis for strict liability). The doctrine of strict liability to which we adhere emphasizes that it is "the manufacturer who placed the item into the stream of commerce [who is] held to be `responsible for the finished product.'" Heath v. Sears, Roebuck Co., 123 N.H. 512, 521, 464 A.2d 288, 292 (1983) (quoting MacPherson v. Buick Motor Co., 217 N.Y. 382, 394, 111 N.E. 1050, 1055 (1916)).
 We limit the application of strict tort liability in this jurisdiction by continuing to emphasize that liability without negligence is not liability without fault. See Bagley v. Controlled Environment Corp. 127 N.H. 556, 558-59, 503 A.2d 823, 825 (1986); Moulton v. Groveton Papers Co., 112 N.H. 50, 52, 289 A.2d 68, 71 (1972). We do not impose what amounts to absolute liability on a manufacturer. Heath supra; Wood v. Public Serv. Co., 114 N.H. 182, 188, 317 A.2d 576, 579 (1974); Elliott v. Lachance, 109 N.H. 481, 484, 256 A.2d 153, 156 (1969).
Thus even though it is true that the general rule against successor corporation liability and its narrow exceptions developed out of concern for the rights of creditors and dissenting shareholders and did not take into account of strict liability in tort, that does not mean that under strict liability theory itself liability in these types of tort cases should be imposed on successor corporations.
Two other preliminary matters should be mentioned. The defendant Lynn points out that the majority of jurisdictions that have considered application of the continuity of enterprise theory or the product line theory have rejected them as a basis to impose liability on successor corporations in product liability cases. That may be so but on the other hand major industrial states have adopted one or the other doctrine, California in Ray v. Alad, supra, New Jersey in Ramirez v. AmstedCT Page 5256-WIndustries, Inc., Michigan in Turner v. Bituminous Cas Co.,
supra. An Illinois court has suggested that expansion of the "mere continuation" exception is properly limited to cases involving personal injury State v. Perkins Will Architects,413 N.E.2d 29, 33 (Ill. 1980).
In 1980 Pennsylvania adopted the product line exception to successor liability, Dawejko v. Jorgensen Steel Co.,434 A.2d 106, 110 (Pa, 1980).
On the other hand the defendant can fairly point to the weight of authority rejecting expansion of successor corporation liability to buttress its position that courts at whatever level and trial courts in particular should refrain from "substantially altering basic principles of tort and corporate law" and leave the issues raised by a case such as this to the legislature,Niccum v. Hydra Tool Corp., 438 N.W.2d 96 (Minn, 1989), Grizmanv. MRM/Elgin, 567 N.E.2d 929 (Mass, 1991).
As to this objection, it depends on the acceptance of the notion that the product line and continuity of enterprise theory, if accepted, would result in a radical departure from strict liability theory. In other words we have strict liability in this area, it has been created by the courts. If either one of the doctrines advanced by the plaintiff do not radically expand strict liability or product liability law or especially if they are an understandable amplification to that law given its purposes, then the court cannot avoid addressing the plaintiff's claims based on the notion that the problem is best left to the legislature.
Continuity of Enterprise Theory
Accepting the fact that the law imposes strict liability in defective product cases on corporations it naturally follows that where a successor corporation is a "mere continuation" of the corporation that manufactured the product the so-called successor corporation should have successor liability. This is in line with strict liability theory which places liability on the manufacturer who places the product into the stream of commerce. The traditional "mere continuation" exception in effect takes cognizance of what may be called de facto merger. The requirements for defacto merger being:
(1) Continuation of the enterprise of the CT Page 5256-X seller corporation so that there is a continuity of management, personnel, physical location, assets and general business operations.
(2) Continuity of shareholders.
 (3) The seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible.
 (4) The purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.
See Shannon v. Samuel Langston Co.,379 F. Sup. 797, 801 (W.D. Mich, 1974).
Given the purposes of strict liability it would make no sense and not be fair to allow the purported successor corporation to escape the liability of the original corporation that manufactured the product where there are common officers to both corporations and the same people who through stock own the successor corporation owned the original corporation. It would be peculiarly unfair if the net result of the transaction made a shell out of the seller corporation so that injured parties could have no relief. The original corporation would have less incentive to improve its product or even get adequate insurance coverage if a successor corporation could escape liability under these circumstances.
Then came cases like Cyr v. B. Offen Co., Inc., 501 F.2d 1145
(CA 1, 1974) and Turner v. Bituminous Cas Co.,244 N.W.2d 873 (1976) that radically expanded the "mere continuation" theory. The problem is that they did it in a rather odd way. The traditional exceptions to the rule against liability of successor corporations including the "mere continuation" exception are rooted in the need to preserve the efficacy of the very doctrine of imposing strict liability on manufacturer's of defective products. From that perspective a real concern, for me at least, is the fact that in asset transfer transactions the seller or manufacturer corporation may be rendered a mere shell against which an injured party may have no practical recourse — a CT Page 5256-Y problem which the traditional exceptions did not fully take into account.
Turner, however, instead of focusing on this discrete problem ignored the strict liability underpinning which provided the basis for creating exceptions to the rule against liability of successor corporations and merely expanded the "mere continuation" exception in such a way as to make irrelevant the strict liability basis for imposing liability ab initio. As said in Fletcher 10 Cyc of Corp. § 4892.75, Turner focuses on continuity of the business enterprise rather than continuity of the corporation. It does this by removing the requirement of continuity of shareholders and equating traditional notions of defacto mergers with a purchase of assets for cash. Having accomplished this change in the Shannon four part test for de facto mergers set forth previously Turner then only referred to all of the tests as "guidelines", 244 N.W.2d at page 283.
The case of Niccum v. Hydra Tool Corp., 438 N.W.2d 96 ((Minn, 1989) provides a good analysis of why the Turner expansion of the "mere continuation" exception has not received strong support in other states. Indeed as Niccum notes eight states have rejected it outright, Kentucky, Missouri, Nebraska, New York, North Dakota, South Dakota, Vermont and Wisconsin, see Niccum at 438 N.W.2d page 99, footnote 1. In fact even Ramirez v. AmstedIndustries, Inc., supra which accepted the product line analysis of Ray v. Alad Corp. supra refused to follow Turner and its expansion of the "mere continuation" exception. The court reasoned that the traditional corporate approach even as broadened by Turner led to inconsistent results. See Ramirez at 431 A.2d page 819, footnote 3. More basically the courts have not followed Turner because as stated in Niccum: "Opponents of the expansion (of the `mere continuation' exception) argue liability should not be imposed on a successor corporation because:
 (1) the successor corporation did not create the risk by placing the defective product into the market.
 (2) any profit realized on the product is only, received in a remote way; and
 (3) the successor has not represented to the public the safety of the predecessor's product" 438 N.W.2d at page 99, also see CT Page 5256-Z Fletcher, 10 Cyc of Corp. § 4892.75.
In effect Niccum is saying that none of the original reasoning for imposing strict liability in defective product cases on manufacturers justifies imposing liability on a successor corporation even if it were to otherwise fall within the Turner guidelines expanding the "mere continuation" exception.
This court is not willing to accept the Turner expansion since if its reasoning is accepted strict liability standards are in large part displaced with no viable theory of liability that this court can comprehend. It makes as much sense to impose liability on a successor corporation under the Turner theory as it would to place liability on society as a whole or at least on all businesses in the same industry as the successor corporation.
Product Line Exception
The so-called product line exception is more than a mere expansion of the traditional exceptions to the general rule of non-liability for successor corporations. The question under this rule is whether the successor corporation continues to manufacture the product alleged to have caused injury not whether the successor is a continuation of the sellor corporation or business.
The requirements of the rule as set forth in Fletcher 15 Cyc. Corp. § 4892.75 are: "(1) the transferee has acquired substantially all the transferors assets, leaving no more than a corporate shell (2) the transferee is holding itself out to the general public as a continuation of the transferor by producing the same product line under a similar name (3) the transferee is benefitting [benefiting] from the Goodwill of the transferor", see Ramirez v. Amsted Industries, Inc., 431 A.2d at page 825;Ray v. Alad Corp, 560 P.2d at pp. 9-11, Martin v.Abbott Laboratories, 689 P.2d 368, 387 (Wash. 1984).
The court in Niccum v. Hydra Tool Corp., 438 N.W.2d 96 at page 99 notes that the majority of courts that have considered this exception have rejected it, see footnote 2 and at page 100 summarizes the reasoning given for this position.
 "(1) the exception is inconsistent with elementary product liability principles and CT Page 5256-AA strict liability principles in particular, in that it results in the imposition of liability without a corresponding duty.
 (2) the exception threatens small successor businesses with economic annihilation because of the difficulty involved in obtaining insurance for defects in a predecessor's product.
 (3) the exception is essentially a radical change in the principles of corporation law and, as such, should be left to legislative action."
If the problem is viewed solely from the perspective of the successor corporation these objections are convincing. Courts that reject the product line exception perceive that the second and third requirements — the successor holds itself out as producing the same product and it benefits from the seller corporations's good will — when used as reasons to impose liability on the successor are not rooted in product liability and strict liability theory. The justification for imposing liability under these theories is set forth in Comment f of Section 402 A of the Restatement (Second) Torts:
 "The basis for the rule is the ancient one of the special responsibility for the safety of the public undertaken by one who enters into the business of supplying human beings with products which may endanger the safety of their persons and property and the forced reliance on that undertaking on the part of those who purchase such goods."
In that sense "liability without negligence is not liability without fault", Simoneau v. South Bend Lathe. Inc., supra 543 A.2d page 409. The successor corporation did not manufacture the product — that could have occurred months or years before the purchase. Furthermore how could the "public" in the market for purchasing the product at the time the plaintiff made his purchase rely on the implicit representations of any other corporation than the company that actually manufactured the product? CT Page 5256-BB
Having said all that, however, it seems to me at least that the most vexing problem created by these situations is reflected in the requirement of the product line exception that the transaction in which the successor acquired the assets of the sellor corporation must result in the original manufacturer becoming a mere shell. The plaintiff is left with no remedy it is said. In fact this consequence of such transactions is the motivating factor behind the creation by courts like Turner andRay of both the continuity of enterprise theory resulting in the expansion of the "mere continuation" exception and the product line theory.
Looked at from this perspective then the product line exception should be viewed not as some radical expansion of the strict liability rule but as a way of preserving the effectiveness of the goals sought to be achieved by imposition of strict liability on the manufacture in the first place. All of this must be viewed on an economic continuum. There is the point before sale where the manufacturer makes its product and sells it to the public; there is the point where the manufacturer enters into negotiations with another corporation to purchase the manufacturer's assets, that is the assets used to manufacture the product; there is the point after the sale transaction where the manufacturer is thereby rendered a shell and the buyer or successor corporation goes on to continue manufacturing the product enjoying with the public a measure of that good will built up by the original manufacturer through the sale of the product. It has been said that: "The rationale for the strict liability rule is that the manufacturer is in a better position to distribute the cost of insuring against such injuries than is the defenseless victim", Conway v. White Trucks, 885 F.2d 90, 95
(CA 3, 1989). If the manufacturer while it is engaged in the production process and when it enters into sale negotiations with another company, need not take into account in valuing its business that a person who was injured by its product might have a viable claim because it knows the sale will render it, the manufacturer, a shell, and the successor who both companies understand will continue the product line, can also avoid liability by skillfully drawing up the terms of the sales contract in light of the limited four exceptions to general liability by successor corporations, then the risk spreading function sought to be achieved by imposing liability on the manufacturer is rendered meaningless.
Successor corporations that buy all the assets of the CT Page 5256-CC manufacturer to continue a product line are not some innocents that buy out a manufacturer on a lark. Thus the objection that permitting a claim will "annihilate" small successor businesses unable to get insurance for defects in a predecessor's product misses the mark. Presumably imposing this liability will result in lower sale prices for the business. Also a company contemplating buying another business through its own experience and access to experts can evaluate the product and the dangers it presents before making an offer, thus having some notion of the risk they might face from past and future purchasers of the product. A member of the public buying a product has no way of protecting him or herself to the same extent or guarding against the fortuity that because the manufacturer he or she buys from may sell its business to another corporation there might not be a remedy for injury against either corporate entity. Under the guise of protecting successor corporations I see no social interest in by so doing enhancing the sales opportunities and market price a manufacturer of a product later causing injury might receive because both it and the prospective buyer know that if the latter company continues a successful product line the successor will not face injury claims and claims against the manufacturer will be rendered meaningless as a result of the sale.
But the acceptance of the product line theory in order to effectuate the goals sought to be achieved by the imposition of strict liability in the first place does not mean it should be liberally applied. As the Conway case points out at 885 F.2d page 95 cases imposing liability under the product line exception emphasize the requirement in Ray that the asset transfer must have caused the destruction of the plaintiff's remedy. As the court notes: "If a remedy against the original manufacturer (is) available, however, the consumer has not been obliged to bear the risk and the justification for imposing successor liability evaporates." Cases strictly enforcing this requirement are SantaMaria v. Owens-Illinois. Inc., 808 F.2d 848, 859 (CA 1, 1986),Kline v. John's Manville, 745 F.2d 1217, 1220 (CA 9, 1984), see also on federal level Nelson v. Tiffany Indus. Inc., 778 F.2d 533,538 (CA 9, 1985), Martin v. Abbott Laboratories. 689 P.2d 368,388 (Wash., 1984), see also Ramirez v. Amsted Indus., Inc.
431 A.2d at page 820.
Conclusion
The defendant Lynn has chosen only to argue the legal merits CT Page 5256-DD of whether either the continuity of enterprise theory or the product line exception should be recognized in our state. I have not agreed with the defendant as to the last mentioned exception and the defendant has not chosen to frame its motion also in terms of whether factually there is a basis for the plaintiff to rely on the so-called product line exception. Therefore, I cannot say on the basis of the record before me that the plaintiff has met or has not met the requirements of the product line exception or particularly the one that to me at least forms the most convincing basis for imposing liability on the successor corporation — the fact that as a result of the sale the manufacturer corporation is rendered a shell.
On this basis then I will deny the defendant Lynn's motion for summary judgment.
Thomas Corradino, Judge