**Joel RAFAEL**

v.

**HURST PERFORMANCE, INC., et al.**

**Civ. No. L–90–2488.**

United States District Court,
D. Maryland.

May 14, 1992.

Harold R. Weisbaum, Jerome Blum & Associates, Baltimore, Md., for plaintiff.

Douglas B. Schoettinger and Melanie L. Stevens, Smith, Somerville & Case, Baltimore, Md., for Swab Wagon Co.

Deborah K. Besche, Kevin T. Smith and Smith, Somerville & Case, Baltimore, Md., for Cars & Concepts, Inc.

James H. Rothschild, Anderson, Coe & King, Baltimore, Md., for defendant Hale Fire Pump Co.

Charles Spigelman and Barry D. Trebach, Rockville, Md., for defendant Coachman Industries & Southern Ambulance Co., Inc.

Daniel Karp, Baltimore, Md., for defendant Liberty Fire Protection Co., Inc.

James E. Gray and E. David Hoskins, Baltimore, Md., for defendants Sunbeam Corp. and Allegheny Intern., Inc.

MEMORANDUM

LEGG, District Judge.

Now before the Court is a motion for reconsideration and/or motion for summary judgment filed by defendant Cars &

Concepts, Inc. ("Cars & Concepts").[1] Having reviewed the record and all pertinent papers, the Court will grant Cars & Concept's motion and enter summary judgment in its favor and against Rafael.

## I. INTRODUCTION

Cars & Concepts first requests that this Court review and reconsider an April 16, 1991 memorandum and order issued by The Honorable Marvin J. Garbis wherein he denied a motion to dismiss filed previously by Cars & Concepts. In that motion, Cars & Concepts had argued (i) that it, as a successor corporation, had no liability for a product manufactured by a predecessor corporation, and (ii) that the Court did not have personal jurisdiction over it. Judge Garbis denied Cars & Concept's motion to dismiss albeit "without prejudice to a motion for reconsideration and/or summary judgment in light of the anticipated decision of the Maryland Court of Appeals in *Miller v. Nissen,* 83 Md.App. 448, 575 A.2d 758 (1990)." *Rafael v. Hurst Performance, Inc. et al.,* Civil No. MJG–90–2488, slip op. at 1 (D.Md. April 16, 1991) (Garbis, J.)[2] The Court of Appeals having issued its decision, *see Nissen v. Miller,* 323 Md. 613, 594 A.2d 564 (1991), Cars & Concepts now asks this Court to reconsider the arguments made in its earlier filed motion to dismiss.

## II. FACTS AND PROCEDURE

On September 24, 1990, plaintiff Joel Rafael ("Rafael") filed the underlying products liability action in this Court, naming as defendants those entities that Rafael alleges were, at one time or another, manufacturers, distributors or merchants of the "Jaws of Life" tool.[3] Having not become associated with the "Jaws of Life" product line until 1982 (more than 6 or 7 years after the "Jaws of Life" tool in question was purchased by the City of Baltimore), Cars & Concepts asserts that it has no liability to Rafael under the doctrine of corporate successor liability. In support of this argument, Cars & Concepts directs this Court's attention to the Court of Appeals' recent decision in *Nissen.*

Cars & Concepts submits undisputed evidence showing that the particular "Jaws of Life" tool that injured Rafael in late 1975 or early 1976 was manufactured by another defendant, Hurst Performance, Inc. of Pennsylvania ("Hurst PA"). *See* Affidavit and Supplemental Affidavit of Ronald L. Stambersky. Roughly seven years later, C & C, Inc., the parent corporation of Cars & Concepts, purchased the assets of Hurst PA through an August 13, 1982 Purchase Agreement. The Purchase Agreement expressly provided that Hurst PA would remain liable for all claims for personal injury or property damage stemming from products sold or distributed by Hurst PA prior to the date of purchase by C & C, Inc.

After it became the new owner, C & C, Inc. replaced the former management of the "Jaws of Life" product line, which it continued to manage. Cars & Concepts maintains that neither it nor C & C, Inc. constituted a mere continuation of Hurst PA, and that instead the transaction between C & C, Inc. and Hurst PA should be

---

**1.** Discussion and argument pertaining to Cars & Concepts' motion was heard by this Court on March 20, 1992. Thereafter, the Court directed defendants Sunbeam Corporation and Allegheny International, Inc. to file an informational affidavit as a supplement to Cars & Concepts' motion. *See Rafael v. Hurst Performance, Inc. et al.,* Civil No. L–90–2488, orders (D.Md. March 20, 1992 and March 31, 1992) (Legg, J.).

**2.** The decision in *Nissen* was expected by Judge Garbis to frame Maryland law with respect to successor corporate liability. *Rafael v. Hurst Performance, Inc. et al.,* Civil No. MJG–90–2488, slip op. (D.Md. April 16, 1991) (Garbis, J.).

**3.** On September 25, 1987, Rafael, a paramedic employed by the Baltimore City Fire Department, sustained a severe laceration to his right hand while cleaning a piece of rescue equipment known as the "Jaws of Life." This tool is used to cut through automobile wreckage to free accident victims therein trapped. Rafael claims that while he was cleaning the tool with a pressurized spray can of solvent, the shear attachment was expelled from the tool, puncturing and exploding the spray can in Rafael's hand. Rafael contends that either the detached portion of the machine or a metal fragment from the spray can lacerated his hand.

construed to be an "assets transfer."[4]

## III. DISCUSSION

In its motion, Cars & Concepts argues that, based upon the Purchase Agreement, it cannot be held liable now for injuries caused by a tool manufactured by Hurst PA in 1975 or 1976. Relying on the Court of Appeals' refusal to adopt a "continuity of enterprise" exception in *Nissen*, Cars & Concepts argues that judgment should be entered in its favor and against Rafael.

Rafael responds that the *Nissen* case may be distinguished from the case *sub judice* because, in the instant case, there took place a *de facto* merger or consolidation; thereunder Cars & Concepts, argues Rafael, remains liable for the acts of its predecessor under a "continuity of entity" theory. Rafael asserts that a *de facto* merger occurred because Cars & Concepts (i) continued the "Jaws of Life" operations in the same location as Hurst PA, (ii) purchased all of its assets, and (iii) left Hurst PA "a mere shell." Memorandum in Support of Answer to Motion for Reconsideration and/or Motion for Summary Judgment at 2. Rafael, however, presents no concrete evidence of this *de facto* merger.

■ In *Nissen*, the Maryland Court of Appeals granted certiorari to address the issue of whether Maryland should adopt the general rule of nonliability of successor corporations along with its four traditional exceptions or whether to adopt a fifth exception for "continuity of enterprise."[5] As defined by the *Nissen* Court, the traditional rule of corporate successor liability provides that:

[a] corporation which acquires all or part of the assets of another corporation does not acquire the liabilities and debts of the predecessor, unless: (1) there is an express or implied agreement to assume the liabilities; (2) the transaction amounts to a consolidation or merger; (3)

the successor entity is a mere continuation or reincarnation of the predecessor entity; or (4) the transaction was fraudulent, not made in good faith, or made without sufficient consideration.

323 Md. at 617, 594 A.2d 564 (citations omitted). After considering the precedent of other states, as well as public policy, the Court of Appeals adopted this traditional corporate successor liability rule (including its four exceptions) in the manner that it had been embraced by a majority of the other states. *Nissen*, 323 Md. at 632, 594 A.2d 564.

In adopting the "traditional rule," the *Nissen* Court therein considered and rejected the proposed "continuity of enterprise" exception in the context of strict liability. The "continuity of enterprise" theory "focuses on the continuation of the business operation or enterprise where there is no continuation in ownership." *Nissen*, 323 Md. at 620, 594 A.2d 564. If applied, this exception would require successor corporations that carry on the business enterprise previously operated by its seller, to accept liability for damages incurred by a product manufactured or distributed by the seller.

The Court of Appeals found that inherent in the doctrine of strict liability was the premise that a seller placing a defective product in the stream of commerce is at fault, and should be liable to those injured by that product. 323 Md. at 623–624, 594 A.2d 564. The *Nissen* Court reasoned that the corporate successor is not the seller and "bears no blame in bringing the product and the user together." 323 Md. at 624, 594 A.2d 564. The *Nissen* Court thus concluded that the continuity of enterprise exception "is inconsistent with Maryland law" in that basic Maryland tort law requires that in order to impose tort liability, there must be fault. 323 Md. at 633, 594 A.2d 564.

---

**4.** The record does not indicate clearly whether Hurst PA continued as a viable corporation after the "assets transfer." In its reply to plaintiff's answer to motion for reconsideration and/or motion for summary judgment, Cars & Concepts cites Article 1.1 of the Purchase Agreement which states only that Hurst was to retain

"among other things, all cash, time deposits and marketable securities; prepaid income taxes and tax refunds to which it might become entitled; and all receivables."

**5.** 321 Md. 225, 582 A.2d 531 (1990).

Although not disputing the validity of the *Nissen* Court's ruling, Rafael presents the brief and legally unsupported argument that Cars & Concepts should be found liable to him under a combined application of the second and third exceptions; more specifically he suggests that a Cars & Concepts is merely a continuation of the entity, Hurst PA.

The Court notes the following information concerning the effect of August 1982 transfer from Hurst PA to C & C, Inc.: Prior to the transfer, Hurst PA operated two different product lines, one of which sold and manufactured the "Jaws of Life" rescue equipment and the other of which sold and manufactured automotive accessories. Pursuant to the Purchase Agreement, Hurst PA transferred both lines (and substantially all of its assets) to C & C, Inc. on September 30, 1982; the only assets retained by Hurst PA were: "cash, time deposits, marketable securities, pre-paid income taxes and tax refunds, receivables, a promissory note from Richard P. Chrysler and return to inventory." *See* Declaration of David R. Sargent at 1–2. According to Mr. Sargent's declaration, all business records also were transferred to C & C, Inc. as part of the asset transfer. Thereafter, the purchased entity was incorporated in the State of Michigan as Hurst Performance, Inc. of Michigan, being a wholly-owned subsidiary of C & C, Inc.

On October 1, 1982, Hurst PA changed its name to Automotive Shifters, Inc. Between October 1, 1982 and September 25, 1987, Automotive Shifters did not engage in any business activity; on September 25, 1987, it merged with another defendant company, Sunbeam Corporation ("Sunbeam"), a subsidiary of defendant Allegheny International, Inc. ("Allegheny").[6]

The record indicates that, after the August 1982 transfer from Hurst PA to C & C, Inc., between the two entities there was no continuation of directors, no continuation of shareholders nor any continuation of officers or upper-level management between the two companies.[7] Indeed, the supplemental declaration of David Sargent, the Assistant Secretary of Sunbeam–Oster Company, Inc., states that most of the Hurst PA directors and officers instead became elected directors and officers of Automotive Shifters. Declaration at 2–3.

■ As defined in *Nissen*, the "continuity of entity" exception applies when:

> there is a continuation of directors and management, shareholder interest and, in some cases, inadequate consideration. The gravamen of the traditional 'mere continuation' exception is the continuation of the *corporate entity* rather than continuation of the business operation.

323 Md. at 620, 594 A.2d 564, quoting 1 FRUMER & FRIEDMAN, *PRODUCT LIABILITY* § 2.06[2][c] at 2–182 to 2–183 (emphasis in original, footnote omitted). As such, the "continuity of entity" exception arises when there is a continuation of management and ownership, such that "the successor is substantially the same as the predecessor." *Baltimore Luggage v. Holtzman*, 80 Md.App. 282, 297, 562 A.2d 1286 (1989). Application of this exception is designed to

> prevent a situation whereby the specific purpose of acquiring assets is to place those assets out of reach of the predecessor's creditors. In other words, the purchasing corporation maintains the same or similar management and ownership but wears a "new hat."

*Id.*, citing *Bud Antle, Inc. v. Eastern Foods, Inc.*, 758 F.2d 1451, 1458 (11th Cir. 1985).

■ The Court finds that the factors noted by the *Holtzman* Court indicating the presence of a continuing entity, *e.g.*, common officers, directors and stockholders,

---

6. According to Mr. Sargent, Sunbeam was a subsidiary of Allegheny until Allegheny's Chapter 11 reorganization; Sunbeam is now a subsidiary of Sunbeam–Oster Company, Inc. Declaration at 2.

7. C & C, Inc. did retain some of Hurst PA's lower level management personnel; however

"all business decisions regarding operation of the purchased entity" were made by Cars & Concepts management. *See* Supplemental Affidavit of Ronald L. Stambersky and Affidavit of David L. Draper.

the remainder of a single corporation after the completion of the assets sale, the continuation of the seller's business practices and policies, and the insufficiency of consideration given for the sale of assets, *id.* (citations omitted), are not present in the case *sub judice.* Even when viewed in a light most favorable to Rafael, he simply has not presented this Court with evidence that any of the above factors exist with respect to the August 1982 transfer. Moreover, the record indicates that Hurst (i) maintained a surviving corporate existence beyond the transfer, (ii) was not absorbed into the purchasing corporation, (iii) was not obligated to dissolve under the Purchase Agreement, and (iv) remained in existence until its 1987 merger with Sunbeam. Similarly, Rafael's allegations of the existence of a *de facto* merger are unsupported by specific evidence and cannot be credited.

## IV. CONCLUSION

This Court will grant the motion for reconsideration and/or for summary judgment filed by defendant Cars & Concepts, Inc. Judgment as to all counts will be entered in favor of defendant Cars & Concepts, Inc. and against plaintiff Joel Rafael separately by an order of even date.

IT IS SO ORDERED.