# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-01933-SCT

*EUNICE PATRICIA NICHOLS HUFF*

*v.*

*SHOPSMITH, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/14/1999 |
| TRIAL JUDGE: | HON. SAMAC S. RICHARDSON |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | PATRICIA A. KILLGORE |
| | JOHN CALHOUN SULLIVAN, JR. |
| ATTORNEYS FOR APPELLEE: | GREGG A. CARAWAY |
| | JAMES R. SILVERSTEIN |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 5/31/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/21/2001 |

### BEFORE McRAE, P.J., DIAZ AND EASLEY, JJ.

### DIAZ, JUSTICE, FOR THE COURT:

¶1. Eunice Patricia Nichols Huff ("Huff") filed suit in the Circuit Court of Rankin County, Mississippi against Jefferson David Huff, her husband; Shopsmith, Inc. ("Shopsmith"), and others seeking damages for personal injuries allegedly caused by the Shopsmith Mark V, a multipurpose power tool. Among other things, Huff alleged that the Mark V was defective and that Shopsmith is legally responsible as the "successor corporation" of Magna American Corporation ("Magna") which manufactured the power tool in question.

¶2. On December 31, 1997, Shopsmith moved for summary judgment on the basis that a corporation is not responsible for liabilities of another corporation when only the assets, but not the stock, of the latter have been acquired. On December 15, 1998, the circuit court granted the motion and dismissed the claims against Shopsmith. Huff moved the trial court to reconsider its ruling, which was denied. Shopsmith moved for a M.R.C.P. 54(b) final judgment and was granted such. From that final judgment, Huff filed a timely appeal alleging that the trial court erred in granting summary judgment and asserts (1) that the "product line" theory should be adopted, holding a successor corporation strictly liable for the torts of its predecessor; (2) that there is a genuine issue of fact as to whether Shopsmith expressly and/or impliedly agreed to assume the liabilities of its predecessor; and (3) that she should be allowed to proceed with her failure to warn claim.

## FACTS

¶3. Huff alleges that she was injured by a Shopsmith Mark V operated by her then future husband, Jefferson David Huff. The Mark V is a multipurpose woodworking tool that can perform a myriad of woodworking tasks, including serving as a table saw, drill press, boring machine, disc sander, and many

others when attachments are used. Specifically, she alleges that on September 29, 1994, as she passed by the machine which Jefferson David Huff was operating, her shirt became entangled in the saw blade, which lacked a protective guard. Huff's right arm was immediately pulled into the machine causing severe injury.

¶4. Jefferson David Huff purchased the Shopsmith Mark V in 1994 at the estate sale of Dr. Tom B. Dominick. Dr. Dominick originally purchased the piece of equipment around 1954. The Mark V Dr. Dominick bought was manufactured by Magna American Corporation in Raymond, Mississippi, and sold by Montgomery Ward, Incorporated. Magna dissolved in 1988, and Montgomery Ward filed for Chapter 11 protection under the United States Bankruptcy Code. This unfortunate chain of events left Huff without direct parties to sue. How Shopsmith became a party to the suit is the true basis for this appeal.

¶5. Originally, the Shopsmith Mark V was manufactured by Magna Engineering Corporation who later sold the product line to Magna American Corporation ("Magna"). Magna continued making and selling the Mark V until 1966, when it ceased all production of woodworking power tools.

¶6. In early 1971, John Folkerth began negotiations to purchase some of Magna's assets in order to reinitiate production of their woodworking power tools line. Folkerth had no previous connection to Magna or Magna Engineering (aside from an admiration of their products). The negotiations led to the execution of an option agreement which gave Folkerth the option to buy the equipment, inventory, patents and other property necessary to resume production of Magna's line of power tools. Included within this agreement were the Mark V trademarks and customer lists.

¶7. In 1972, Folkerth assigned all of his rights under the agreement to Shopsmith, a newly formed Ohio corporation. Shopsmith entered into a supplemental agreement with Magna which resulted in Shopsmith's acquiring the necessary assets to begin production of the woodworking power tool line. Under this supplemental agreement, Magna received no stock nor interest in Shopsmith, and both sides were represented by counsel. The necessary physical assets were subsequently shipped from Mississippi to Shopsmith's factory in Ohio. At no time were members of management or other employees of Magna holders of any stock or otherwise associated with Shopsmith. Since the agreement in 1972, Shopsmith has been the sole manufacturer of Mark Vs, and Magna remained in business until voluntary dissolution in 1988.

## DISCUSSION

¶8. When reviewing the granting of summary judgment, we apply the de novo standard of review. *McCullough v. Cook*, 679 So.2d 627, 630 (Miss. 1996). Thus, we sit in the same position as did the trial court. As such, in order to affirm the granting of summary judgment, we must decide that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Miss. R. Civ. P. 56(c).

### I. WHETHER THE "PRODUCT LINE" THEORY SHOULD BE ADOPTED, HOLDING A SUCCESSOR CORPORATION STRICTLY LIABLE FOR THE TORTS OF ITS PREDECESSOR.

¶9. Huff urges us to adopt the "product line" theory of products liability so that a successor corporation may be held liable for injuries caused by defective products manufactured by its predecessor corporation. The theory was originally put forth by the California Supreme Court in ***Ray v. Alad Corp.***, 560 P.2d 3 (Cal.

1977), and has since been adopted by several other states.

¶10. The general rule has been that a corporation which acquires all of the assets, but no stock, of another corporation does not also acquire the debts and liabilities of the original. *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cir. 1985). However, under the product line theory, successor corporations which undertake the manufacture of the same products as the predecessor are liable for injuries caused by defects in that product and inherit the liabilities associated with the product even if sold and manufactured by the predecessor corporation. *Ramirez v. Amsted Indus., Inc.*, 431 A.2d 811, 825 (N.J. 1981). Under the product line theory, manufacturers (both predecessor and successor corporations) are in a better position to insure against defective products, and the compensation of innocent victims is spread throughout society. *Hickman v. Thomas C. Thompson Co.*, 592 F. Supp. 1282, 1284 (D. Colo. 1984).

¶11. There is one significant hurdle to traverse before the merits of the products line theory may be properly considered. Shopsmith argues that the product line theory has been found applicable only in states where strict liability is still a valid theory of recovery and that Mississippi's adoption of Miss. Code Ann. § 11-1-63 (Supp. 2000) is an abandonment of strict products liability. Shopsmith misinterpreted the holding of the trial court or, at the least, takes it a step too far. With the adoption of § 11-1-63, common law strict liability, as laid out in *State Stove Mfg. Co. v. Hodges*, 189 So. 2d 113 (Miss. 1966), is no longer the authority on the necessary elements of a products liability action. However, the concept of strict liability is still quite alive within the statute, and the principles in *State Stove* are a driving force in products liability actions even after adoption of the statute. *Wolf v. Stanley Works*, 757 So. 2d 316, 319-20 (Miss. Ct. App. 2000). Whether an action is labeled "statutory products liability" or "strict liability" matters little since the basic precepts are largely the same.

¶12. Even under the product line theory, certain elements must be present to subject a successor corporation to liability for the products of a predecessor. The successor must produce the same product under a similar name, have acquired substantially all of the predecessor's assets leaving no more than a corporate shell, hold itself out to the public as a mere continuation of the predecessor, and benefit from the good will of the predecessor. *Ray*, 560 P.2d at 8-11.

¶13. There is no question that Shopsmith produces the same product as did Magna, and the name remains unchanged. Although Shopsmith argues to the contrary, there is also little doubt that Shopsmith benefitted from the good will of Magna. Through various advertising media, Shopsmith often points to the reliability, craftsmanship, and longevity of the Mark V.

¶14. A problem arises as to the other two necessary elements. Although Shopsmith makes references that the Mark V has been around since 1954, the corporation also makes clear that it was not the inventor nor original manufacturer of the Mark V. In fact, the Shopsmith web page (http://www.shopsmith.com) tells the long and involved story of how it came to make the Mark V. There is no definitive evidence that Shopsmith holds itself out to the public as a mere continuation of Magna, Magna Engineering, or any other corporation. As for the final requirement, when Shopsmith acquired Magna's assets, it did not acquire substantially all of them and certainly did not leave Magna a mere corporate shell. Shopsmith acquired only the power tools aspect of Magna's enormous enterprise. Magna remained a viable corporate entity for nearly 16 years **after** the agreement with Shopsmith. Therefore, even though we view the product line theory as a viable basis for recovery, the present situation does not meet the standards utilized by other courts that have adopted the theory.

**II. WHETHER THERE IS A GENUINE ISSUE OF FACT AS TO WHETHER SHOPSMITH EXPRESSLY AND/OR IMPLIEDLY AGREED TO ASSUME THE LIABILITIES OF ITS PREDECESSOR.**

¶15. Traditionally, only four exceptions to the general rule against successor liability have been recognized under Mississippi law:

> (1) When the successor expressly or impliedly agrees to assume the liabilities of the predecessor;
>
> (2) When the transaction may be considered a de facto merger;
>
> (3) When the successor may be considered a "mere continuation" of the predecessor; or
>
> (4) When the transaction was fraudulent.

*Russell v. SunAmerica Sec., Inc.*, 962 F.2d 1169, 1175-76 (5th Cir. 1992); *Mozingo*, 752 F.2d at 174. Shopsmith asserts that it does not fit within any of these exceptions.

¶16. Huff alleges that certain clauses and language contained within the original option purchase agreement indicate that the parties contemplated that Shopsmith may be liable to a third party. As such, Huff asserts that there is a genuine question whether Shopsmith expressly and/or impliedly agreed to assume the liabilities of Magna. It is worthy to note that Folkerth was the original party to this agreement and that Shopsmith later purchased it from him. Huff is essentially arguing that the "hold harmless" clause, as an agreement for Magna to indemnify Shopsmith for any liabilities incurred upon its behalf, is evidence of an assumption of liability by Shopsmith. Shopsmith rebuts this contention by pointing out that there is no consent by it in the option agreement to assuming Magna's liabilities and that the purpose of the "hold harmless" clause is to indemnify it against losses, not the other way around. Huff's allegation is not well founded and is rejected.

¶17. In addition to assumption of liability, a successor corporation may be imputed with the predecessor's liabilities if evidence suggests there was a de facto merger of the two corporations. *Mozingo*, 752 F.2d at 174. A de facto merger exists when there is a continuity of management, personnel, assets and operations; a continuity of shareholders; the predecessor dissolves shortly thereafter; and the successor assumes the predecessor's obligations. *Hadar v. Concordia Yacht Builders, Inc.*, 886 F. Supp. 1082, 1090 (S.D.N.Y. 1995); *T.H.S. Northstar Assocs. v. W.R. Grace & Co.-Conn.*, 840 F. Supp. 676, 678 (D. Minn. 1993). The present situation does not fit this scheme. Shopsmith and Magna never merged. Instead, they remained two separate, viable corporate entities for years following the purchase of assets.

¶18. Although Huff asserts that Shopsmith falls within the third exception, we have seen that the situation does not fulfill the requirements of the traditional rule or product line theory. Thus, the allegation that the Shopsmith/Magna agreement constitutes a "mere continuation" of the original enterprise is without merit and does not subject Shopsmith to the liabilities of Magna.

¶19. Finally, there is no evidence, and Huff does not allege, that the transaction was fraudulent. All of the circumstances indicate that this was a legitimate business transaction where both sides were represented by counsel. There exists absolutely nothing to suggest that Magna was somehow trying to avoid liability nor any other illegal motive. Thus, this case does not fall within any of the previously recognized exceptions.

### III. WHETHER HUFF SHOULD BE ALLOWED TO PROCEED ON ITS FAILURE TO WARN CLAIM.

¶20. Notwithstanding our decision as to the product line theory, Huff asserts that the summary judgment should be reversed and she should be allowed to proceed with her failure to warn claim. Huff points out that several courts, which normally follow the traditional rule of non-liability of successor corporations, have held that a successor corporation may have an independent duty to warn when defects in the predecessor's products come to its attention. *Leannais v. Cincinnati, Inc.*, 565 F.2d 437, 441-43 (7th Cir. 1977); *Nissen Corp. v. Miller*, 594 A.2d 564, 570 n.3 (Md. 1991) (citing 1 L. Frumer & M. Friedman, *Products Liability* § 2.06[5], at 2-195 (Rev. 1989)). "The courts consider the following factors as significant in determining the existence of a relationship effective to create a duty to warn: (1) succession to a predecessor's service contract; (2) coverage of the particular machine under the contract; (3) a service of that machine by the purchaser-corporation; and (4) the purchaser-corporation's knowledge of defects and of the location or owner of that machine." *Harris v. Newman Mach. Co.,* 641 F. Supp. 146, 148 (S.D. Miss. 1986). Huff asserts a different set of criteria, but it is unclear exactly what authority she relies upon in citing her requirements as opposed to those listed in *Harris*. Nonetheless, the above elements seem to be the most important when trying to prove a duty to warn.

¶21. In the present case, Shopsmith is not subject to liability for failure to warn of defects in its predecessor's products. First, Shopsmith never expressly agreed to assume Magna's service contracts. Second, there is no evidence that Shopsmith ever legally obligated itself to service Magna Mark Vs, even though it did undertake to do so on a few occasions. As for contacting owners of the products, Shopsmith had the right to purchase Magna's customer lists, but there is no indication that it did so. In the present case, contacting the Huffs would have been a virtual impossibility. After all, Dr. Dominick originally purchased the Mark V around 1954, and Mr. Huff did not acquire it until 1994. Furthermore, Mr. Huff purchased the Mark V at an estate sale.

### CONCLUSION[1]

¶22. There are four exceptions to the traditional rule that a successor corporation does not acquire the debts and liabilities of a predecessor when acquiring its assets (but no stock), and Shopsmith does not fall within any of these. Huff urges us to allow recovery under the product line theory, but the facts of this case simply do not conform to the necessary elements allowing such recovery. Put simply, Shopsmith is just too far removed from any wrongdoing to be held liable.

¶23. There also is no material issue as to whether Shopsmith expressly or impliedly agreed to assume liability under the purchase option agreement. The remoteness of the parties, as well as sheer impracticality, support the conclusion that Shopsmith did not have a duty to warn. A wholly separate company is not held to the same duties as a predecessor corporation merely because the first purchased some of the latter's assets.

¶24. Summary judgment was appropriate, and the proper outcome was reached. Therefore, the judgment of the Rankin County Circuit Court is affirmed.

¶25. **AFFIRMED.**

**BANKS AND McRAE, P.JJ., MILLS AND EASLEY, JJ., CONCUR. COBB, J.,**

**CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY PITTMAN, C.J., SMITH AND WALLER, JJ.**

**COBB, JUSTICE, CONCURRING IN PART:**

¶26. I concur with the result in this case and with all of the majority opinion except for its adoption by dicta of the "product line" theory of products liability. The majority states: "Therefore, even though we view the product line theory as a viable basis for recovery, the present situation does not fit the standards utilized by other courts that have adopted the theory." Such a major expansion of our state's products liability law should only be done where warranted by the facts and after due and deliberate evaluation and discussion by this Court.

**PITTMAN, C.J., AND SMITH AND WALLER, JJ., JOIN THIS OPINION.**

1. Although not binding upon this Court, other courts have expressly ruled upon these issues and found that they were without merit. *Kolar v. G.C. Peterson Mach. Co.*, No. 90-11300 (D. Minn. 1988); *Lewman v. Shopsmith*, Case No. C-3-80-394 (S.D. Ohio 1984).